UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOHN DEATON et al. )<br>)<br>)<br>Petitioners, )<br>)<br>v. )<br>)<br>U.S. SECURITIES AND EXCHANGE )<br>COMMISSION et al. )<br>)<br>Respondents. )<br>) | Civil Action No. 1:21-cv-00001-WES |

**RESPONDENTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER
JURISDICTION AND FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED**

Respondents, the U.S. Securities and Exchange Commission ("Commission") and Commissioner Elad Roisman (former Acting Chairman of the Commission),[1] move to dismiss the petition for writ of mandamus filed by Petitioners John Deaton et al. Petitioners challenge a Commission complaint filed in the U.S. District Court for the Southern District of New York charging Ripple Labs, Inc. ("Ripple") and two of its executives with making unregistered offers and sales of securities called "XRP" in violation of the federal securities laws. *See SEC v. Ripple Labs, Inc. et al.*, No. 1:20-cv-10832 (S.D.N.Y., filed Dec. 22, 2020). Petitioners describe themselves

---

[1] From December 23, 2020, to January 20, 2021, Commissioner Roisman served as Acting Chairman of the Commission. On January 21, 2020, Commissioner Allison Herren Lee became the Acting Chair of the Commission.

1

as XRP investors and ask this Court to order the Respondents to amend the complaint against Ripple to exclude "the XRP owned by Petitioners." ECF No. 1 at p. 26. Petitioners also request certification of a class action, a "constructive trust" and, despite the mandamus statute's exclusion of monetary judgments, seek damages and other fees and costs. *Id.* at pp. 26-27.

Dismissal is appropriate under Rule 12(b)(1) because the Court lacks subject matter jurisdiction due to sovereign immunity. In addition, Petitioners lack constitutional standing to challenge the Commission's complaint against Ripple. Dismissal is also appropriate under Rule 12(b)(6) because Petitioners failed to state a claim upon which relief can be granted, as they are unable to show that any officer or employee of the Commission owes them a nondiscretionary duty to provide the requested remedies. The Commission does not request an oral argument or evidentiary hearing.

## BACKGROUND

**I.   The Commission's discretionary authority to bring actions to enjoin potential violations of the federal securities laws**

The Commission's mission is to "protect investors; maintain fair, orderly, and efficient markets; and facilitate capital formation."[2] Congress granted the Commission broad discretion to conduct investigations of potential violations of the federal securities laws and to bring actions in any district court to enjoin such violations. *See, e.g.*, Section 20(b) of the Securities Act of 1933 ("Securities Act"), 15

---

[2] *See* https://www.sec.gov/about.shtml.

U.S.C. § 77t(b); Sections 21(a) and (b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(a) and (b).  The Securities Act states, "[w]henever it shall appear to the Commission that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the [federal securities laws], the Commission may, in its discretion, bring an action in any district court of the United States…to enjoin such acts or practices."  15 U.S.C. § 77t(b).

## II. The Commission's New York Regional Office's Complaint Against Ripple in the District Court for the Southern District of New York

On December 22, 2020, the Commission filed a complaint against Ripple, Ripple's current Chief Executive Officer (CEO), and Ripple's former CEO and co-founder (collectively, "Defendants"), and, on February 18, 2021, filed an amended complaint against Defendants.  *See SEC v. Ripple Labs, Inc. et al.,* No. 1:20-cv-10832 (S.D.N.Y., filed Dec. 22, 2020); Amended Complaint, *SEC v. Ripple Labs, Inc., et al.*, No. 1:20-cv-10832 (S.D.N.Y., filed Feb. 18, 2021) ("Am. Compl.").  The amended complaint alleges that, from 2013 to the present, Defendants sold over 14.6 billion units of the digital asset security XRP in return for cash or other consideration worth over $1.38 billion. Am. Compl. at ¶ 1.  The amended complaint further alleges that Ripple undertook this offering without registering the offers and sales of XRP with the Commission as required by the federal securities laws.  *Id.*  Ripple never filed a registration statement, which would have provided investors with the material information required of issuers soliciting public investment.  *Id.* at ¶ 2.  In its amended complaint, the Commission is requesting

3

that the Court permanently enjoin Defendants from violating the applicable securities laws, order them to disgorge their ill-gotten gains, prohibit them from participating in any offering of digital asset securities, and impose civil money penalties. *Id.* at ¶ 12. On February 22, 2021, the district court entered an initial case management order setting forth certain deadlines for discovery, and discovery is currently ongoing.

### III.   The Instant Mandamus Petition

On January 1, 2021, Petitioners, who identify themselves as investors in XRP, filed the instant "Petition for Writ of Mandamous [sic]" against the Commission and Commissioner Roisman in his capacity as Acting Chairman. Petition, ECF No. 1. The Petition alleges that the Commission's former Chairman, Jay Clayton,[3] had a "fiduciary duty to enforce the SEC mission statement" and "knowingly and intentionally caused multi-billion-dollar losses to…investors who have purchased, exchanged, received, and/or acquired…XRP." *Id.* at ¶ 2.

The Petition asserts that former Chairman Clayton directed the complaint against Ripple "with improper motive and specific intent to cause irreparable harm." ECF No. 1, ¶ 3. Petitioners ask this Court to order the Commission to "amend its complaint against Ripple to exclude the claim that the XRP owned by Petitioners constitute securities." *Id.* at p. 26. The Petition further seeks

---

[3] On December 23, 2020, Chairman Clayton concluded his tenure with the Commission. He is not a party to this suit.

certification of a class action,[4] a "constructive trust for any awards against Respondent on behalf of the trust" or any funds resulting from the Commission's case against Ripple, actual damages, attorney's fees and costs, interest, and "any other relief the court might deem just, appropriate, or proper." *Id.* at pp. 26-27.

Petitioners cite to 28 U.S.C. § 1361 as the sole basis for jurisdiction. ECF No. 1, ¶ 91. Section 1361, the mandamus statute, gives the United States district courts original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

## LEGAL STANDARDS

### I.   Motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)

On a Rule 12(b)(1) motion to dismiss, the party bringing the case bears the burden of establishing by a preponderance of the evidence that the court has jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). For the purposes of a Rule 12(b)(1) motion, Respondents can argue that the alleged facts, taken as true, are insufficient to establish jurisdiction. *Valentin v. Hospital Bella*

---

[4] At this stage of the case, it is not necessary to consider any issues related to class certification. Only the claims of the class representatives are relevant to a motion to dismiss. *See, e.g., Pruell v. Caritas Christi*, 645 F.3d 81, 84 (1st Cir. 2011) ("where the 'district court never had jurisdiction over the claim of the class representative . . . it had no jurisdiction over the class action….'") (internal quotations omitted); *Parrish v. Arvest Bank*, No. 17-6042, 2017 WL 5564449, at *2 (10th Cir. Nov. 20, 2017) ("A putative class action complaint should be dismissed if the named plaintiff's individual claims fail to state a claim for relief") (internal citations omitted).

*Vista*, 254 F.3d 358, 363 (1st Cir. 2001).[5]  A Rule 12(b)(1) motion based on sovereign immunity presents "pure (or nearly pure) questions of law." *Id.* Similarly, the existence of standing presents "a legal question." *Katz v. Pershing, LLC*, 672 F.3d 64, 70 (1st Cir. 2012).

## II.     Motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion to dismiss assesses the sufficiency of a complaint, testing whether the person bringing the case has pled sufficient facts to state a claim that is plausible on its face.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  While courts accept as true all "well-pleaded facts," *id.,* they do not accept threadbare recitals of the elements of a cause of action or conclusory allegations.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Golden v. Management and Training Corp.,* 266 F.Supp.3d 277, 281 (D.D.C. 2017) (citing *Twombly*, 550 U.S. at 555) (court need not accept a plaintiff's legal conclusions as true, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations).

The plausibility standard requires that the person bringing the case show more than "a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citations omitted).  Alleged claims have facial

---

[5] A Rule 12(b)(1) motion may also challenge the accuracy of the Petitioners' factual allegations.  *See Valentin*, 254 F.3d at 363.  For purposes of the instant 12(b)(1) motion, however, it is not necessary to consider the accuracy of the allegations.

plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

### I. The mandamus petition should be dismissed for lack of subject matter jurisdiction because it is barred by the doctrine of sovereign immunity

The United States, "as sovereign, is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). That is, consent to suit is a prerequisite to subject matter jurisdiction over a claim against the United States, its agencies, and officials. *See United States v. Orleans*, 425 U.S. 807, 814 (1976); *see also SEC v. Indep. Drilling Corp.*, 595 F.2d 1006, 1008 (5th Cir. 1979) (doctrine of sovereign immunity applies to the Commission). "Without a waiver of sovereign immunity, a court is without subject matter jurisdiction over claims against federal agencies or officials in their official capacities." *Treasurer of NJ v. U.S. Dep't of the Treasury*, 684 F.3d 382, 395 (3d Cir. 2012). Such a waiver "must be express and unambiguous to confer subject matter jurisdiction on a court." *Id.* at 396.

### A. The mandamus statute does not waive sovereign immunity

The First Circuit has held that the mandamus statute does not constitute a waiver of sovereign immunity by the United States. *See Coggeshall Dev. Corp. v.*

*Diamond*, 884 F.2d 1, 3 (1st Cir. 1989).[6]  Thus, if the case is deemed to be one against the government, Petitioners' mandamus claim is barred by sovereign immunity. *Muirhead v. Meacham*, 427 F.3d 14, 18 (1st Cir. 2005). Where a petitioner brings a case against an individual, "an inquiring court must analyze the claim to ascertain whether, despite the nomenclature, the suit is, in reality, a suit against the United States." *Id.* In this inquiry, "both the conduct challenged and the relief sought may have a bearing on its outcome." *Id.* Here, both the relief sought and the conduct alleged show the case is one against the government, not against an individual.

With respect to relief, "a suit, although nominally aimed at an official, will be considered one against the sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." *Muirhead*, 427 F.3d at 18. Suits to restrain the enforcement of the laws of the United States would interfere with public administration and therefore seek barred relief against the sovereign. *See Kennedy v. Rabinowitz,* 318 F.2d 181, 183 (D.C. Cir. 1963) ("Obviously, restraining the Attorney General from enforcing the criminal laws of the United States would interfere with the public administration") (internal quotations omitted). The requested equitable relief—an

---

[6] *See Villegas v. United States*, 926 F. Supp. 2d 1185, 1201 (E.D. Wa. 2013) (explaining that "the various circuits of the Court of Appeals differ over whether the [Mandamus] Act…waives sovereign immunity," but that the First, Eighth, and Ninth circuits have held that the statute does not waive sovereign immunity).

amendment to the Commission's complaint against Ripple and a constructive trust for any funds the Commission receives in that case—would have to be obtained from the Commission itself. The remaining relief consists of a vague reference to "funds awarded against Respondent," actual damages, attorney's fees, and costs, ECF No. 1, at 26-27, but monetary relief is not available under the mandamus statute. The mandamus statute provides for only one form of relief—an order compelling an officer or employee of the United States to perform a nondiscretionary duty. 28 U.S.C. § 1361; *see also Fay v. United States*, 389 Fed. App'x 802, 2010 WL 2977454 (10th Cir. 2010) (dismissing a prisoner's mandamus claim and holding that sovereign immunity barred a request for monetary relief). Thus, the nature of the relief sought indicates that the case is against the government.

Consideration of the conduct at issue leads to the same result. Courts considering whether a case is against an individual officer or the government itself have looked to the Supreme Court's decision in *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949), and considered whether the party bringing the action alleges that an individual has acted outside of the scope of his statutory authority. *Muirhead*, 427 F.3d at 18; *Coggeshall*, 884 F.2d at 3. Petitioners have made no such allegations regarding Commissioner Roisman, the only individual named as a Respondent. The only allegations in the Petition regarding Commissioner Roisman refer favorably to his positions and statements. *See* ECF No. 1, ¶¶ 65 & 88. Thus, the Petition is against the Commission, and

9

sovereign immunity bars this action unless another waiver of sovereign immunity applies, which it does not.

### B. The Administrative Procedure Act does not waive sovereign immunity in this case

Petitioners are not bringing a claim under the Administrative Procedure Act (APA) and have not alleged that it provides a waiver of sovereign immunity here. Nonetheless, because the APA "waives the Government's immunity from actions seeking relief 'other than money damages'" in certain circumstances, 5 U.S.C. § 702; *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260-61 (1999), we explain why it would not waive sovereign immunity in this matter. "[T]o proceed under the APA's waiver of sovereign immunity a person must (i) possess statutory standing; (ii) seek relief other than money damages; and (iii) not be excluded by the waiver's two provisos [in 5 U.S.C. § 701(a)]." *Gentile v. SEC*, 974 F.3d 311, 316 (3d Cir. 2020).

Initially, Petitioners do not possess statutory standing. To possess statutory standing, a person must suffer a legal wrong because of an agency action or be adversely affected or aggrieved by an agency action within the meaning of a relevant statute. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970). Petitioners do not have statutory standing because they are not challenging an agency action as that term is used in the APA. An agency action is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."

10

5 U.S.C. § 551(13). Thus, an "agency action" is part of a process where an agency is imposing some requirement or providing some authorization or relief. Filing a complaint in court is not agency action because it is part of a process where a court, not an agency, will take action. *See City of Oakland v. Holder*, 901 F.Supp.2d 1188, 1195 (N.D. Cal. 2013), *aff'd* 798 F.3d 1159 (9th Cir. 2015) ("the filing of a civil action does not fit within the APA's definition of agency actions: it is not a rule, order, license, sanction, form of relief, or failure to act"). In addition, even if filing a complaint were deemed agency action, Petitioners have not been adversely affected or aggrieved because, as discussed in more detail below, it is the actions of third parties, not the filing of the Commission's complaint against Ripple that has affected them. Therefore, they do not possess statutory standing for purposes of the APA.

Petitioners are also unable to proceed under the APA's waiver of sovereign immunity to the extent they seek monetary damages. *See Sibley v. Ball*, 924 F.2d 25, 28 (1st Cir. 1991) (stating that the APA's waiver of sovereign immunity "is at pains to exclude suits seeking money judgments").

Finally, Petitioners cannot meet the third prong. Section 701(a) of the APA contains two provisos that limit the waiver of sovereign immunity in Section 702. *See Cowels v. FBI*, 936 F.3d 62, 66 (1st Cir. 2019) (recognizing Section 701(a) limits Section 702's waiver of sovereign immunity). Both provisos preclude a waiver of sovereign immunity here.

The first proviso is that the APA does not apply if "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Section 702 similarly provides that it does not "affect[] other limitations on judicial review." 5 U.S.C. § 702. Thus, Section 702 "was designed to waive sovereign immunity only in situations when specific provisions establishing judicial review do not exist and leave untouched areas in which such review was . . . the subject of explicit legislation." *Sprecher v. Graber*, 716 F.2d 968, 974-75 (2d Cir. 1983). Here, an avenue for judicial review of the Commission's complaint against Ripple clearly exists. The Southern District of New York will decide whether the complaint warrants any relief. Thus, the Commission's enforcement proceeding in the Southern District of New York, brought under the Securities Act, supplies the exclusive method for testing the validity of the Commission's complaint against Ripple. 15 U.S.C. § 77t(b) (providing for court actions to enforce the federal securities laws); *see also Sprecher*, 716 F.2d at 975 (holding that the Exchange Act provided the "exclusive method by which the validity of SEC investigations and subpoenas may be tested in the federal courts.").

The second proviso is that the APA does not apply to "agency action committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *Cowels*, 936 F.3d at 66 (stating that although the APA waives sovereign immunity, agency action is not subject to judicial review "to the extent that" such action "is committed to agency discretion by law" (quoting *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993)). Agency actions falling under this exception often involve "a complicated balancing of a number of factors which are peculiarly within [the agency's] expertise." *Heckler v.*

*Chaney*, 470 U.S. 821, 831 (1985). The filing of a civil action is an "exercise of discretion" that is not subject to judicial review under the APA. *See City of Oakland v. Lynch*, 798 F.3d 1159, 1165 (9th Cir. 2015) (holding that the government's civil forfeiture action "relied on the exercise of the equivalent of prosecutorial discretion and is thus immune from judicial review under the APA."). Indeed, the filing of civil enforcement actions is committed to the Commission's discretion by law. *See* 15 U.S.C. § 77t(b) ("[w]henever it shall *appear to the Commission* that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the [federal securities laws], the Commission may, *in its discretion*, bring an action in any district court of the United States…to enjoin such acts or practices") (emphasis added); *Gentile*, 974 F.3d at 319 (holding that an APA claim challenging a Commission investigation was barred by sovereign immunity because the Commission's decision to investigate fell within the proviso for agency action committed to the agency's discretion by law). Therefore, the APA does not provide a basis for waiving sovereign immunity.

    II.    **The mandamus petition should be dismissed for lack of subject matter jurisdiction because Petitioners lack Article III standing**

Article III of the Constitution "limits the judicial power of the federal courts to actual cases and controversies." *Katz*, 672 F.3d at 71, *citing* U.S. Const. art. III, § 2, cl. 1. The limitation requires Petitioners to prove "injury, causation, and redressability." *Katz* at 71, *citing Lujan,* 504 U.S. at 560-61. When a "plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish."

13

*Lujan* at 562 (internal citations omitted). "The relevant inquiry is whether…the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976). "Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." *Id.* The federal court can only "redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Id.* at 41-42.

Here, Petitioners assert that after the Commission filed its complaint against Ripple, third-party digital asset trading platforms delisted XRP, resulting in XRP losing value. ECF No. 1 at ¶¶ 54-55, 61-62, 66. Petitioners do not allege that the Commission ordered, or even asked, these platforms to delist XRP; instead, Petitioners allege that the platforms determined to delist XRP. Therefore, any alleged injury "results from the independent action of some third party not before the court." *Simon*, 426 U.S. at 42.

Additionally, Petitioners cannot show that digital asset trading platforms will reverse course, or that the value of XRP will increase, should the Commission amend its complaint to exclude "the XRP owned by Petitioners," while continuing to pursue the case against Ripple. *See Simon*, 426 U.S. at 42 (when low-income individuals alleged that an IRS tax ruling incentivized hospitals to deny services to indigents, the Court found that "it does not follow…that the denial of access to hospital services in fact results from [the IRS tax ruling], or that a court-ordered

14

return …to their previous [tax] policy would result in these respondents' receiving the hospital services they desire"). Because their alleged injury is unlikely to be redressed by the relief sought, Petitioners lack standing and the case should be dismissed for lack of subject matter jurisdiction.

### III. Even if the Court had jurisdiction, the mandamus petition should be dismissed for failure to state a claim upon which relief can be granted

#### A. Legal standard for mandamus

To qualify for mandamus relief, Petitioners must show that they have a "clear right to the relief sought, [have] no other adequate remedy, and that there is a clearly defined and peremptory duty on the part of the defendants…to do the act in question." *Georges v. Quinn*, 853 F.2d 994, 995 (1st Cir. 1998). A district court's power to compel official action by mandamus is limited to the enforcement of plainly defined, purely ministerial, nondiscretionary duties. *See Decatur v. Paulding*, 39 U.S. 496, 514-17 (1840); *Wilbur v. United States*, 281 U.S. 206, 218 (1930). A duty qualifies as "ministerial" only when it "is so plainly prescribed as to be free from doubt and equivalent to a positive command." *Wilbur*, 281 U.S. at 218. The party seeking mandamus relief has the burden of showing that its right to the writ is "clear and indisputable." *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002). If the action petitioner seeks to compel is discretionary, there is no clear right to relief and mandamus is not an appropriate remedy. *See, e.g.*, *Heckler v. Ringer*, 466 U.S. 602, 616 (1984).

>   **B.   Petitioners fail to state a claim under the mandamus statute because they cannot demonstrate that the Commission owes them any clearly-defined, nondiscretionary duty**

Petitioners have failed to state a claim for mandamus relief because they cannot show that the Commission owes them any duty to amend its complaint against Ripple or to otherwise provide the equitable relief they seek.[7] Petitioners have not specified any statute that purportedly conflicts with the Commission's actions in the Ripple matter. While Petitioners vaguely claim that former Chairman Clayton, who is not a party to this suit, had a "fiduciary duty" to "enforce the SEC mission statement," ECF No. 1, ¶ 2, they fail to provide any authority demonstrating that a mission statement, or any other nonstatutory language, imposes a nondiscretionary duty on a Commission officer or employee for purposes of the mandamus statute.

Moreover, the action prompting Petitioners' filing—the complaint alleging that Ripple's unregistered offers and sales of XRP violate the Securities Act's registration requirements—fits squarely within the discretionary statutory authority granted to the Commission. As previously explained, Section 20(b) of the Securities Act states, "[w]henever it shall *appear to the Commission* that any person is engaged or about to engage in any acts or practices which constitute or will constitute a violation of the [federal securities laws], the Commission may, *in its discretion*, bring an action in any district court of the United States…to enjoin such

---

[7] As discussed above, the mandamus statute provides only for equitable relief.

16

acts or practices." 15 U.S.C. § 77t(b) (emphasis added).  Based on the plain language of the Securities Act, Petitioners are unable to demonstrate that the Commission, in making the charging decisions in the complaint against Ripple, violated a nondiscretionary statutory duty.  Instead, the filing of a district court action to enjoin potential securities law violations is plainly discretionary, and is available when it "appears to the Commission" that securities violations are occurring or will occur under the relevant statute.[8]

Petitioners allege that the Commission misapplied the factors from *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), when it charged Ripple with making unregistered offers and sales of a digital asset security (XRP) from 2013 to the present.  ECF No. 1, ¶ 144.  However, federal courts recognize that an officer's authority to enforce the laws "obviously carries with it the authority to construe the individual statutes and apply them to the factors before him." *See Kennedy,* 318 F.2d at 183 n. 9.  For these reasons, Petitioners have failed to state a claim upon which relief can be granted.

---

[8] *See also Barron v. Reich*, 13 F.3d 1370 (9th Cir. 1994) (the Department of Labor's authority to bring actions enforcing the minimum wage provisions is discretionary); *City of Milwaukee v. Saxbe*, 546 F.2d 693, 701 (7th Cir. 1976) ("there is no clear, plainly defined…duty requiring the Attorney General to investigate…hiring or promotion practices …or to make the same discretionary determination regarding the filing of civil actions"); *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965) ("The attorney for the United States is ... an executive official of the Government, and ... he exercises a discretion as to whether or not there shall be a prosecution in a particular case.").

## **CONCLUSION**

The Petition should be dismissed under Rule 12(b)(1) because the Court lacks subject matter jurisdiction over this action. Furthermore, the Petition should be dismissed under Rule 12(b)(6) because Petitioners failed to state a claim upon which relief can be granted.

Date: March 5, 2021                              Respectfully submitted,


/s/  Christina Cotter
Christina Cotter, IL Bar No. 6301562
Senior Trial Counsel
Office of the General Counsel
U.S. Securities and Exchange Commission
100 F Street NW
Washington, D.C. 20549
(202) 551-7676
cotterc@sec.gov

*Counsel for Respondents*